*G. H. Dunn*, for the plaintiff.

*D. J. Caswell*, for the defendant.

Nov. Term,<br>1833.

JUDAH<br>v.<br>M'NAMEE.

---

## JUDAH v. M'NAMEE.

A physician may maintain an action for his fees.

If it appear in the record that the jury were sworn, the omission of the words "the truth to speak in the premises," cannot be assigned for error.

APPEAL from the *Knox* Circuit Court. Verdict and judgment below for *M'Namee*, the plaintiff.

*Tuesday,*<br>*November 26*

STEVENS, J.—*M'Namee* declared against *Judah* in assumpsit. The declaration contains three counts. The first two of these counts, after averring that *M'Namee* was then, and for divers years then last past had been, a doctor of physic, and had during all that time used and exercised the profession, art, and business of a physician, declares that *Judah* is indebted to him in the sum of 269 dollars and 43 cents, for work, labour, care, and diligence done, performed, and bestowed by him, as such doctor of physic, in visiting and prescribing physic, &c. The third count averred that *M'Namee* was then, and for divers years then last past had

been, an apothecary, and had for all that time carried on, used, and exercised the art, business, and profession of an apothecary; and that *Judah* is indebted to him in the further sum of 269 dollars and 43 cents, for work, labour, care, and diligence done, performed, and bestowed by him in healing and curing *Judah* and his family, &c., of divers wounds, sores, diseases, and maladies.

The first two counts were demurred to, and the demurrer overruled by the Court. On the third count, an issue on the plea of *non-assumpsit* was made between the parties.

By the record, it appears that a jury of twelve good and lawful men were then impanelled to try the issue joined, and also to inquire of the damages sustained by the plaintiff, &c., who being sworn, upon their oaths say, &c., omitting the usual words "the truth to say in the premises," &c. A motion was made in arrest of judgment which was overruled, and final judgment rendered on the verdict.

The objection to these counts is, that they are for a physician's fees, and that by the common law of *England*, no action will lie for the fees of a physician; that we have adopted the common law of *England*, and made it the rule of our decision, and unless we had a statute to authorise it, no such action can be maintained.

The general principle in *England* seems to be, that a physician cannot maintain an action for fees. It was so decided by the Court of king's bench in 1791, after solemn argument. The point was, however, warmly opposed. The counsel who argued the case, said that there were no solemn decisions to that effect, and that there was no authority for it in the books. Lord *Kenyon*, however, so decided; but his lordship did not pretend to say that it was settled law, or that it was sustained by authority. He simply said, that it had been understood that the fees of a physician were honourable and not demandable of right; that it was much more for the credit and rank of that honourable body that it should be so understood; and his lordship seemed to doubt whether the physicians would not disclaim a right, which would place them in society on a footing with common men (1).

It is true that we have adopted the common law of *England*, but it is a qualified adoption. We have only adopted so much of it, as is of a general nature and not local to that kingdom, and

not inconsistent with our own laws. We have not adopted any part of it that is peculiar to that country, or that is contrary to, or inconsistent with, the spirit and practice of our own institutions. It is at least doubtful, whether the principle here contended for was any part of the common law, at the time the states of this *Union* dissolved their allegiance to that kingdom; but if it were, it is clearly a principle which is local to that country, and is inconsistent with the spirit and genius of all our institutions, and the practice of our Courts. Our institutions and laws are all based on the great and broad principles of liberty and equality, and know nothing about nobles and ignobles, honourables and common men. There is but one class known: all stand upon the same footing, and bow with equal submission to one common master; that is, the law of the land. We have no privileged orders known to the law, either as to suing or being sued. It was decided in *Pennsylvania*, in the case of *Mooney* v. *Lloyd*, 5 Serg. & Rawle, 416, that both by their practice and their statutes, a physician can maintain an action for his fees. Dane, in the first volume of his Digest, p. 619, says that a physician can maintain an action for his fees in *America*; and that it was so settled, after solemn argument, in the Supreme Judicial Court of *Massachusetts*, as early as the year 1789.

From this view of the case, we have no hesitation in saying that such an action is maintainable by our laws; and that it is and has always been the practice, not only of the Courts of this state, but also of the several states of this *Union*. Such has always been the understanding of our legislative bodies. This is evidenced by their having at several times, passed acts prohibiting physicians from maintaining actions for their fees and medical prescriptions, unless they were licensed, &c.; which clearly implies that they could maintain an action for those fees and services, if they were not prohibited.

The next objection is to the oath of the jury. It is contended that it does not appear of record that the jury were lawfully sworn; that the omission of the words "the truth to speak in the premises," is a fatal defect. It is a principle as well settled as any other, that the oath of a juror should correspond with what he is sworn to do; and that the words "the truth to speak in the premises," apply to every thing which a jury can be impanelled and sworn to do in a Court of justice. But other

words may be used, as where a jury are simply sworn to try an issue, or to try issues, the oath may be "to well and truly try the issue, or "the issues;" or if they are sworn to assess damages, the oath may be to "well and truly inquire of and assess the damages," &c. But in all cases, it should appear of record that the jury were lawfully sworn. The books all say that if it does not so appear, such an omission is a material and fatal defect. The only difficulty in the case is, whether there is not enough appearing of record, to authorise us to presume that the jury were lawfully sworn? We had some doubts, but have concluded that it is safest so to presume. We think, that if we do not so presume, we shall open a door that will produce much difficulty, and probably do great injustice to suitors.

A large majority of the Circuit Court clerks appear totally regardless of the manner in which they make their records; they not only lose sight of all form, but they leave out and confuse and mangle the material substance. They appear to have no clerical pride. The paper on which their transcripts are written, is frequently not even put together in the form of a transcript. Under such a state of things, we have supposed it best to pay as little regard as possible, to every thing that can fairly be presumed to be a clerical mistake or error.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Whitcomb* and *S. Judah,* for the appellant.

*C. Dewey,* for the appellee.

(1) *Chorley* v. *Bolcot,* 4 T. R. 317. See also the case of an apothecary, who, having passed himself off as a physician, sued for his fees, and was non-suited. The Chief Justice, in that case, said,—"If a person passes himself off as a physician, he must take the character *cum onere.* When he brings an action for visits paid by him as a physician, I will give him credit for being so, and tell him he must trust to the honour of his patients." *Lipscombe* v. *Holmes,* 2 Camp. 441.